Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000596
06-MAR-2015
08:11 AM

NO. CAAP-14-0000596

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF AA

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
HILO DIVISION
(FC-S NO. 11-0042)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Mother-Appellant (Mother) appeals from the Order
Terminating Parental Rights of Mother, filed on February 26,
2014, in the Family Court of the Third Circuit (family court),[1]
which terminated Mother's parental rights to her child, AA.

On appeal, Mother contends (1) the family court erred
by failing to appoint counsel for Mother when the family court
granted Petitioner-Appellee State of Hawai'i, Department of Human
Services (DHS) temporary custody of AA; (2) the family court
erred by terminating Mother's parental rights less than two
months prior to her release from incarceration; (3) DHS failed to
prove that Mother would not be able to provide a safe family home
within a reasonable period of time; and (4) the family court
erred by terminating Mother's parental rights instead of
requiring DHS to make a good faith effort at evaluating
guardianship for AA.

---

[1]   The Honorable Anthony K. Bartholomew presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows:

(1) Mother cites to In re T.M., 131 Hawai'i 419, 319 P.3d 338 (2014), and contends that the family court erred by failing to appoint counsel for Mother after the family court granted DHS' Petition for Temporary Foster Custody.

In In re T.M., the Supreme Court held that

> in light of the constitutionally protected liberty interest at stake in a termination of parental rights proceeding, we hold that indigent parents are guaranteed the right to court-appointed counsel in termination proceedings under the due process clause in article I, section 5 of the Hawai'i Constitution. We direct that upon the filing date of this opinion, trial courts must appoint counsel for indigent parents upon the granting of a petition to DHS for temporary foster custody of their children.

Id. at 436, 319 P.3d at 355 (footnotes omitted).

In re T.M. was issued by the supreme court on January 6, 2014. However, Mother had court-appointed counsel since October 4, 2011, long before In re T.M. was issued. Moreover, Mother's reliance on In re T.M. to assert that she should have been appointed counsel as soon as the family court ordered temporary foster custody of AA is misplaced, because this aspect of the ruling in In re T.M. was expressly prospective. Id.

Moreover, although Mother was advised by the family court in this case that she was entitled to an attorney, and that an attorney would be appointed if she could not afford one, Mother chose to delay submitting her application for appointment of counsel. The right to appointed counsel applies to indigent parents. Id. Mother was informed on June 30, 2011, at the first hearing on the Petition for Temporary Foster Custody, that she was entitled to court-appointed counsel if she could not afford one, that she needed to complete an application, and that if she applied that day and qualified, an attorney would be appointed

that day. Mother stated that she would continue with the proceeding without counsel.

Upon continuation of the Temporary Foster Custody hearing on July 7, 2011, the family court noted that Mother had not yet applied for court-appointed counsel, but Mother stated that she was still discussing with her grandfather whether he would like to help her retain counsel and that she was comfortable in the courtroom so it was okay. Thus, Mother again opted to continue without court-appointed counsel.

Mother did not complete an application for court-appointed counsel until September 29, 2011, after DHS was granted temporary foster custody. Her request was approved and filed shortly thereafter on October 3, 2011 and an Order Appointing Counsel for Mother was filed on October 4, 2011. Thus, Mother was not deemed indigent until October 3, 2011, after she submitted her request for court-appointed counsel. Appointed counsel was thereafter approved forthwith.

Thus, the family court advised Mother of her right to court-appointed counsel and appointed counsel immediately upon Mother's submission of her application and the determination that she was indigent. Mother's first point of error is without merit.

**(2) and (3)** There was clear and convincing evidence that it was not reasonably foreseeable that Mother would become willing and able to provide a safe family home for AA, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the date AA entered foster care. Hawaii Revised Statutes (HRS) § 587A-33(a)(2) (Supp. 2014).

> Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

DHS filed a petition for Temporary Foster Custody when AA was seven (7) days old due to Mother testing positive for amphetamines at AA's birth and AA testing positive for exposure to methamphetamine. AA entered foster care on July 7, 2011. Mother's parental rights were terminated on February 6, 2014, approximately two years and seven months after AA entered foster care.

After this case was initiated and while it was pending, Mother was arrested on September 26, 2011 for attempted methamphetamine trafficking in the 1st degree. Mother was convicted of attempted promoting a dangerous drug and was incarcerated for two years beginning on April 17, 2012. Carlene Greenlee (Greenlee), a DHS social worker, testified that after Mother's release from incarceration in April 2014, she would still need to complete substance abuse treatment, show that she could sustain what she learned in substance abuse treatment for a period of time, maintain sobriety for at least six months, and show a sense of stability in her living situation, including employment and involvement in the community. Greenlee estimated that with that additional six months, the case would need to be open for a total of three and a half to four years.

At the time that Mother's parental rights were terminated, DHS provided clear and convincing evidence that it was not foreseeable that Mother could provide a safe family home within a reasonable period of time, even with the assistance of a service plan, not to exceed two years from the date AA entered foster care. Mother contends that, under In re Doe, 100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002), DHS should have waited until Mother was released from prison to allow her to meaningfully participate in services. However, In re Doe also recognizes that incarceration of a parent "[can] be considered along with other factors and circumstances impacting the ability of the parent to

4

remedy conditions of abuse and neglect." Id. (internal quotation marks omitted).

Given the circumstances in this case, the family court did not abuse its discretion by terminating Mother's parental rights prior to her release from incarceration.

**(4)** Mother contends the family court erred by proceeding with a termination of parental rights hearing instead of requiring that DHS make a good faith effort to provide a guardianship over AA without termination of Mother's parental rights.

Mother does not cite any statute or rule that mandates DHS or the family court to consider guardianship without termination of parental rights when seeking to terminate parental rights. Rather, a permanent plan shall state whether adoption, legal guardianship, or permanent custody is the goal. HRS § 587A-32(a)(1) (Supp. 2014). The permanent plan shall document "[a] compelling reason why legal guardianship or permanent custody is in the child's best interests if adoption is not the goal[.]" HRS § 587A-32(a)(3)(A) (Supp. 2014). The family court shall determine if the permanent plan is in the best interests of the child and in reaching this determination shall "[p]resume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home[.]" HRS § 587A-33(a)(3)(A) (Supp. 2014). DHS stated that adoption was in the best interest of AA and the evidence presented supported DHS' position.

Nonetheless, DHS did consider a guardianship for AA. On December 9, 2013, the family court entered an "Order Re: Chapter 587A, H.R.S., as Amended," which stated that the termination of parental rights trial was continued to "allow for a possible resolution by way of legal guardianship without termination of parental rights with the prospective guardian being the current resource parent, paternal Aunt[,]" and "[a]t the hearing on January 16, 2014, the parties either proceed with

5

the termination of parental rights hearing or go forward with the legal guardianship without termination of parental rights[.]" Mother testified that guardianship with and without termination of Mother's parental rights was explained to Paternal Aunt at an Ohana Conference. However, when the parties appeared for the termination of parental rights hearing, DHS reported that Paternal Aunt refused an arrangement of guardianship without termination of Mother's parental rights. Mother in turn, did not agree to a guardianship that would involve termination of her parental rights and Mother thus advised the family court that she was ready to proceed with the hearing to determine whether her parental rights would be terminated. Thus, although not required, DHS did consider a guardianship without termination of Mother's parental rights, but the arrangement was not acceptable to Paternal Aunt with whom AA was placed.

The family court did not err by proceeding with a termination of parental rights hearing instead of requiring that DHS make a good faith effort to provide a guardianship without termination of Mother's parental rights.

Therefore, IT IS HEREBY ORDERED that the Order Terminating Parental Rights of Mother, filed on February 26, 2014, in the Family Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, March 6, 2015.

On the briefs:

Rebecca A. Copeland
(Law Office of Rebecca A. Copeland)
for Mother-Appellant

Mary Anne Magnier
Diana M. Mellon-Lacey
Deputy Attorneys General
for Petitioner-Appellee
Department of Human Services

Presiding Judge

Associate Judge

Associate Judge